IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

ROBERT JAMES WATSON III,   Civ. No. 6:19-cv-00239-AA

          Plaintiff,   **OPINION & ORDER**

   v.

CARLA URBIGKEIT; STATE
OF OREGON,

          Defendants.

_____

AIKEN, District Judge.

   This case comes before the Court on a Motion to Dismiss filed by Defendants Carla Urbigkeit and the State of Oregon. ECF No. 65. For the reasons set forth below, the Motion is GRANTED in part and DENIED in part.

### LEGAL STANDARD

   To survive a motion to dismiss under the federal pleading standards, a pleading must contain a short and plain statement of the claim and allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a pleading does not require "detailed factual allegations," it needs more than "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 677-78. "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678. Legal conclusions without any supporting factual allegations do not need to be accepted as true. *Id*.

## BACKGROUND

Plaintiff Robert James Watson III is a resident of the State of Washington. Second Am. Compl. ("SAC") ¶ 2. Defendant Carla Urbigkeit is a resident of the State of Oregon and a detective with the Oregon State Police ("OSP"). *Id*. at ¶ 3.

In August 2017, Watson purchased a dump truck from Misty Billings for $60,000. SAC ¶ 11. Watson alleges he agreed to purchase the truck for $25,000 in cash plus a $35,000 cashier's check. *Id*. at ¶ 13. After taking possession of the truck, Watson took the truck from Oregon to Washington where he sought and received a certificate of title and registration certificate. *Id*. at ¶ 16.

Billings, through statements to Oregon State Police, claimed that Watson stole the truck, rather than purchasing it. SAC ¶¶ 19, 21. Urbigkeit was the OSP detective assigned to the case. *Id*. at ¶ 23. On August 31, 2017, the Lincoln County District Attorney's Office convened a grand jury, which indicted Watson for Aggravated Theft in the First Degree and Possession of a Stolen Vehicle. *Id*. at ¶ 24. The truck was alleged to be the stolen property in both counts. *Id*. A criminal case was also commenced against Watson in Washington. *Id*. at ¶ 45.

On September 8, 2017, Urbigkeit obtained a search warrant in Oregon state

court for the search of Watson's residence in Washington and the seizure of the truck. SAC ¶ 26. At Urbigkeit's request, the police in Washington also sought and received search warrants for Watson's residence and for the seizure of the truck. *Id.* at ¶ 29. On September 12, 2017, police in Washington seized the truck and impounded it under a "police hold" with a private towing company in Washington. *Id.* at ¶ 32. Urbigkeit instructed the towing company that the truck was not to be released to anyone but Billings or Billings' associates and that it should not be released to Watson "under any circumstances." *Id.* at ¶ 34. Urbigkeit arranged for Billings to travel to Washington to take possession of the truck. *Id.* at ¶ 33. "Throughout this process Urbigkeit was the primary point of communication between all parties." *Id.*

On September 13, 2017, Urbigkeit authorized the towing company to release the truck to Billings and authorized Billings to transport the truck back to Oregon. SAC ¶ 35. Urbigkeit authorized Billings to retain control and possession of the truck during the pendency of the criminal charges against Watson. *Id.* at ¶ 36. Plaintiff alleges that Urbigkeit also authorized Billings to retain the $60,000 she had been paid by Watson for the truck. *Id.* at ¶ 37. Plaintiff alleges that the retention of the money and the truck by Billings was contrary to the directives of the Lincoln County District Attorney's Office. *Id.* ¶ 38.

During the pendency of Watson's criminal charges, Plaintiff alleges that Urbigkeit authorized Billings to "materially modify the truck," and that Urbigkeit "intentionally obstructed [Watson's] defense team and investigators from inspecting the truck on several occasions." *Id.* at ¶¶ 39-40.

Plaintiff also alleges that, at some point while the prosecution of Watson was pending, "Urbigkeit authorized Billings to sell the truck," SAC ¶ 41, although the transcripts of communications between Urbigkeit and Billings reflect that Urbigkeit discouraged Billings from selling the truck "for court reasons." *Id.* at ¶ 50. On February 2, 2018, Billings sold the truck to a third party for $135,000. *Id.* at ¶ 42. Plaintiff alleges that Urbigkeit authorized Billings to keep the money she received for the sale of the truck on February 2, 2018 in addition to the money she had received from Watson. *Id.* at ¶ 43.

The criminal case against Watson in Lincoln County was dismissed on July 2, 2018 and the criminal case against Watson in Washington was dismissed on June 6, 2019. SAC ¶¶ 44-45. Watson served Defendants with a tort claim notice on July 2, 2018. *Id.* at ¶ 117.

## DISCUSSION

Watson brings claims for violation of his Fourteenth Amendment substantive and procedural due process rights against Urbigkeit pursuant to 42 U.S.C. § 1983, as well as state law claims for conversion and negligence against the State of Oregon. Defendants move to dismiss all claims.

### I.   Federal Due Process Claims

Title 42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). To maintain a claim under § 1983, "a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or

statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). In this case, Watson alleges that Urbigkeit violated his Fourteenth Amendment right to substantive and procedural due process.

### A. Substantive Due Process

Substantive-due-process analysis has two elements. *Washington v. Glucksberg*, 521 U.S. 702, 720. (1997). First, the claimed right or liberty must be fundamental and, objectively, "deeply rooted in this Nation's history and tradition," and so "implicit in ordered liberty" that "neither liberty nor justice would exist if [the right] were sacrificed." *Id.* at 720-21 (internal quotation marks and citation omitted). Second, the plaintiff must provide a "careful description of the asserted fundamental liberty interest." *Id.* at 721.

The Supreme Court has held that "the substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (internal quotation marks and citation omitted). "Substantive due process is ordinarily reserved for those rights at are 'fundamental.'" *Brittain v. Hansen*, 451 F.3d 982, 990 (9th Cir. 2006). "The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity," and the Supreme Court "has always been reluctant to expand the concept of substantive due process." *Albright v. Oliver*, 510 U.S. 266, 271-72 (1994). To state a

substantive due process claim, a plaintiff must "show both a deprivation of [his] liberty and conscience shocking behavior by the government." *Brittain*, 451 F.3d at 991.

Here, Watson's substantive due process claim rests on the seizure of the truck and its subsequent release to and sale by Billings. Watson alleges that Urbigkeit was the moving force behind the seizure of the truck and that Urbigkeit then arranged for the truck to be released to Billings. Billings thereafter sold the truck and retained both the money paid by Watson and the money paid by the eventual buyer. These allegations relate, however, to actions taken by *Billings* and Watson only connects those acts to Urbigkeit by the conclusory allegation that Urbigkeit "authorized" Billings to sell the truck and retain the proceeds. In the first instance, this is contradicted by alleged communications from Urbigkeit urging Billings not to sell the truck "for court reasons." SAC ¶ 50. Additionally, Watson does not allege any facts showing how, once the truck was back in Billings' possession, Urbigkeit exercised control over Billings' decision to sell the truck. Of note, Watson initially brought this action against Billings, but subsequently settled his claims against her. SAC ¶ 46 n.2. In terms of actual concrete actions taken specifically by Urbigkeit, the SAC alleges only that Urbigkeit wrongfully released the truck to Billings, contrary to Oregon law and OSP procedures, along with a vague and conclusory claim that Urbigkeit somehow prevented Watson's criminal defense attorneys from inspecting the truck.

"Only the most egregious official conduct can be said to be arbitrary in a constitutional sense." *Brittain*, 451 F.3d at 991 (internal quotation marks and citation omitted, alterations normalized). Urbigkeit's conduct, as alleged in the SAC, does not meet that threshold, especially as, at the time, Watson was being prosecuted for the theft of the truck from Billings. In context, this would have seemed to be no more than the return of stolen property to its rightful owner. The Court therefore grants Defendants' motion to dismiss this claim.

### B. Procedural Due Process

Parties asserting a procedural due process violation are generally required to show a deprivation of a constitutionally protected liberty interest or property interest and a denial of adequate procedural protections. *Mathews v. Eldridge*, 424 U.S. 319, 332-33 (1976). "Constitutional due process requires that a party affected by government action be given the opportunity to be heard at a meaningful time and in a meaningful manner." *Cal. ex rel. Lockyer v. F.E.R.C.*, 329 F.3d 700, 708 n.6 (9th Cir. 2003) (internal quotation marks and citation omitted). In determining what process is due, courts apply the factors specified by the Supreme Court in *Matthews v. Eldridge*:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Matthews*, 424 U.S. at 335.

Here, Watson alleges that he had a property interest in the truck and that he was deprived of the interest when the truck was released to Billings, who sold it. As with Watson's substantive due process claim, the allegations of the SAC clearly show that it was Billings, and not Urbigkeit, who sold the truck and Billings who retained the money paid to her by Watson for the truck. Watson offers only a conclusory allegation that Urbigkeit authorized or permitted Billings to do so. In terms of actual actions alleged to have been taken by Urbigkeit, Watson alleges only that she released the truck into Billings' care and control. However, Watson asserts that this was done contrary to OSP policy, which require that the prosecuting district attorney or the court must authorize the release of property seized pursuant to a search warrant.

The Court concludes that Watson has stated a claim for violation of his procedural due process rights in that he has alleged that Urbigkeit released the dump truck to Billings without the approval of the district attorney or the court and that, as a result, Watson was ultimately permanently deprived of the truck without adequate procedural safeguards or process. The Court therefore declines to dismiss Watson's procedural due process claim.

**II.     State Law Claims**

Defendants move to dismiss Watson's other state law claims for conversion and negligence for failure to give timely tort claim notice under the Oregon Tort Claims Act ("OTCA") and for failure to state a claim.

The State of Oregon authorizes civil suit against the state, its agencies,

officers, and employees through the Oregon Tort Claims Act. *See* ORS 30.260 *et seq*. However, the OTCA requires that potential plaintiffs file a tort claim notice within 180 days of the accrual of the cause of action. ORS 30.275(2). This notice does not need to be a pleading; it need only notify relevant state actors of an intent to file suit, the identity of the claimant, and the events giving rise to the claim. ORS 30.275(4). The notice period commences when the plaintiff "has a reasonable opportunity to discovery his injury and the identity of the party responsible for that injury." *Adams v. Or. State Police*, 289 Or. 233, 239 (1980).

The Court previously dismissed Watson's state law claims for failure to provide timely notice under the OTCA but granted leave to amend to allege additional facts. ECF No. 58. In the SAC, Watson alleges that his claims accrued for OTCA purposes when Billings sold the truck on February 2, 2018 and that Watson's July 2018 notice is therefore timely. However, as discussed in the previous sections, the sale of the truck was carried out by Billings and not by the remaining Defendants. Watson has settled his claims against Billings. As noted, the only concrete, non-conclusory allegation of acts taken by Urbigkeit relate to her release of the truck to Billings, which took place on September 13, 2017. SAC ¶ 35. Watson knew, or had a reasonable opportunity to discover, that the truck had been released to Billings in September 2017 and so the OTCA notice period began to run at that time. Because the notice Watson gave in July 2018 occurred more than 180 days after his claim accrued, Watson's state law claims are barred by the notice requirement of the OTCA and the Court need not reach Defendants' challenge to the merits of Watson's claims

for conversion and negligence. The Court grants Defendants' motion to dismiss Watson's state law claims.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss, ECF No. 65, is GRANTED in part and DENIED in part. The Court denies the motion as to Plaintiff's claim under 42 U.S.C. § 1983 for violation of his procedural due process rights. The Court grants the motion as to the remaining claims and Plaintiff's claim under 42 U.S.C. § 1983 for violation of his substantive due process rights and Plaintiff's state law claims for negligence and conversion are DISMISSED.

It is so ORDERED and DATED this ___30th___ day of June 2022.

                                            /s/Ann Aiken
                                            ANN AIKEN
                                            United States District Judge